only that Poggenburg was depositing the funds of the estate in his personal account, but also that he was using those funds to pay his individual debts, and defendant received the benefit of that diversion of the funds. For that reason I think that plaintiff is entitled to recover those sums, amounting to $2,765, with interest.

I think that defendant was entitled to a jury trial, and that it was error to deny its repeated motions that the cause be tried before a jury. As it turned out, however, there was no dispute as to any relevant fact, and consequently the error in refusing a jury trial could have worked no injury to defendant and may be overlooked. Code of Civil Procedure, § 1317.

The judgment appealed from should be modified, so as to reduce the recovery as hereinbefore indicated, and, as modified, affirmed, without costs in this court.

---

### QUINN v. STATEN ISLAND RAPID TRANSIT RY. CO.

(Supreme Court, Appellate Division, First Department.  December 30, 1915.)

WHARVES ⟲⟿21—PERSONAL INJURIES—LICENSEES.

    Where the captain of a coal barge, which was moored against a long pier, started after dark to walk along the pier to the shore, he was at most a mere licensee on the pier, and where the pier was sufficient for the purposes for which it was intended—i. e., the loading of coal—the captain, who stepped through a hole in the flooring and fell into the water, cannot recover; the owner of the pier not being liable for negligence to a licensee.

    [Ed. Note.—For other cases, see Wharves, Cent. Dig. §§ 44–49; Dec. Dig. ⟲⟿21.]

Appeal from Trial Term, New York County.

Action by John Quinn against the Staten Island Rapid Transit Railway Company. From a judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Lyle H. Hall, of New York City, for appellant.
George F. Hickey, of New York City, for respondent.

SCOTT, J. The defendant is the owner of a long pier at Staten Island, in the county of Richmond, which is used for the handling and shipment of coal. For about 430 feet at its outer end it is double-decked. Coal cars are run onto the upper deck, and their contents dumped into coal chutes. Barges to be loaded are moored alongside the pier and filled from the coal chutes. The principal use of the lower deck is to afford support for the upper. It is floored over and covered with what one witness graphically describes as a labyrinth of columns spaced closely together and designed to sustain the great weight of the upper deck. These columns are built upon 12-inch timbers, running across the pier at 12-foot intervals, and projecting 8 inches above the flooring. This flooring extends from the outer end of the pier

---

⟲⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to a point about 300 or 350 feet from the shore, where the pier narrows and the flooring is discontinued.

Plaintiff is the captain of a coal barge, which had been sent to the pier to be loaded. On the evening of March 19, 1911, which was Sunday, plaintiff and his wife started after dark to walk along the pier to the shore. They proceeded along the middle of the pier, between the columns and over the timbers above described, until they reached the point where the flooring ended, when they fell into the water, and plaintiff was injured. He had no necessity, arising out of the business upon which he was engaged, to walk along the pier at all, and did so purely for purposes of his own. It is apparent that plaintiff, if not a trespasser upon the pier, was at the most merely a licensee, toward whom the defendant owed no care beyond the very slightest, and no legal duty except not to willfully or intentionally injure him. The rule applicable to such a case is succinctly stated in Cusick v. Adams, 115 N. Y. at page 59, 21 N. E. at page 673, 12 Am. St. Rep. 772, as follows:

> "The principle is now well settled by repeated adjudications, in this country and in England, that where a person comes upon the premises of another without invitation, but simply as a bare licensee, and the owner of the property passively acquiesces in his coming, if an injury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence, for such person has taken all the risk upon himself."

This rule is reiterated and supported by a great number of cases in this state. No act of affirmative negligence is charged against defendant or shown by the proof, and obviously the nature of the construction of the lower deck of the pier was such that no invitation to use it as a passageway could be inferred. The pier was apparently properly constructed for the purpose for which it was intended to be used, and certainly the portion upon which plaintiff elected to walk was apparently not intended to be used as a way of passage. Plaintiff simply took his chance of finding a hole or an obstruction, for "an open hole which is not concealed otherwise than by the darkness of night is a danger which a licensee must avoid at his peril." Fox v. Warner-Quinlan Asphalt Co., 204 N. Y. 240–244, 97 N. E. 497, 38 L. R. A. (N. S.) 395, Ann. Cas. 1913C, 745. No cause of action whatever was shown against the defendant, and the motion, made at the close of the case, to dismiss the complaint, should have been granted.

Judgment reversed, with costs, and the complaint dismissed, with costs. Order filed. All concur.